IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| KIONDRA BROADWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 123-195 |
| | ) | |
| ANTOINETTE LEWIS, ADA Coordinator; | ) | |
| ANTHONY HIGHTOWER, General Counsel; | ) | |
| DR. GARRETT GREEN, Chief Diversity | ) | |
| Officer; DR. NEIL MACKINNON, | ) | |
| Provost and Vice President of Academic | ) | |
| Affairs; and AUGUSTA UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff commenced the above-captioned case *pro se* and is proceeding *in forma pauperis* ("IFP"). Because she is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), but the Court may dismiss an amended complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii).

I.  **SCREENING THE AMENDED COMPLAINT**

  A.  **Background**

Plaintiff names as Defendants: (1) ADA Coordinator Antoinette Lewis, (2) General Counsel Anthony Hightower, (3) Chief Diversity Officer Dr. Garrett Green, (4) Provost and Vice President of Academic Affairs Dr. Neil Mackinnon, and (5) Augusta University. (See generally

doc. nos. 1, 8.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff was hired as the Deputy Chief Diversity Officer ("DCDO") at Augusta University on February 1, 2022. (Doc. no. 8, p. 15.) Plaintiff describes the essential functions of her job as:

> (1) Manage ODL's Outreach efforts and engage with institutional, local, state, national, and international communities to build collaborative relationships. Attend and participate in programs and events hosted by student organizations, campus departments, and community agencies; (2) Directs the Diversity, Equity, and Inclusion (DEI) Strategic Implementation Plan to ensure efforts to advance DEI are coordinated and effective across the campus. Provide in-person and virtual coaching to academic colleges and campus departments on best practices in utilizing the AU DEI Blueprint; (3) Provides consultation and expertise to students, staff, faculty, or administrative/academic units that are experiencing concerns/complaints related to bias incidents. Conduct meetings with faculty, staff, and students along with Human Resources to address and provide recommendations to affairs associated with bias and discrimination; (4) Collaborate with units to conduct policy review to ensure AU policies are equitable; when warranted, drafts relevant DEI-related AU policies and reports to inform and foster an inclusive campus community. Evaluate campus procedures and plans related to DEI with various campus partners, institutions in the USG, and community members; and (5) Partner with the CDO, to expand the reach and increase the influence of the Office of Diversity and Inclusion through development/advancement efforts. Build relationships and initiate plans to raise funds related to DEI.

(Id. at 15-16.) On September 7, 2022, Plaintiff's supervisor noted she exceeded expectations in a performance evaluation. (Id. at 16.) Plaintiff had also been featured in several panels and campus-wide publications. (Id.)

Sometime around October 3, 2022, Plaintiff began exhausting all of her sick leave for unspecified reasons, and on November 30, 2022, she met with Defendant Lewis to discuss options for accommodations. (Id. at 16, 74-80.) On December 1, 2022, Plaintiff was approved for unpaid medical leave under the Americans with Disabilities Act ("ADA"). (Id.) On December 7, 2022, Plaintiff was diagnosed with chronic bronchitis, asthma, and obstructive sleep apnea. (Id. at 14-15, 17.) Later in 2023, she was diagnosed with depression and anxiety.

2

(Id.)  On January 10, 2023, Defendant Lewis notified Plaintiff she was approved for unpaid leave as an ADA accommodation until March 1, 2023.  (Id. at 17, 35, 89.)  A few weeks later, Defendant Lewis began calling and emailing Plaintiff regarding issues with her medical documentation, even though Plaintiff was "on leave."  (Id. at 17, 97-98.)  Plaintiff believed this to be harassment.  (Id. at 17-18.)

On January 24, 2023, Plaintiff went to urgent care and was referred to a cardiologist for chest pain.  (Id. at 17, 91.)  On January 26, 2023, Plaintiff followed up with her primary care doctor.  (Id. at 93.)  The same day, Plaintiff informed Defendant Lewis her condition(s) had worsened, and she would not be medically released to return to work until additional examinations could be performed.  (Id. at 17, 93.)  These medical issues would extend Plaintiff's unpaid leave and short-term disability beyond the initial return date of March 1st.  (Id.)  Defendant Lewis informed Plaintiff she needed to return to work on January 31, 2023, because the documentation provided by Plaintiff did not support the request for additional unpaid leave.  (Id. at 18, 97.)

Throughout February and March 2023, Plaintiff communicated with Defendant Lewis by email regarding medical documents and Plaintiff's medical status.  (Id. at 18-19, 97-114.)  On February 23, 2023, Plaintiff's primary care doctor completed HR forms stating Plaintiff could not return to work and could not perform her essential job duties.  (Id. at 118-19.)  On February 24, 2023, Plaintiff faxed and emailed a statement to Defendant Lewis that she was to *always* be notified first when her medical information was requested, which caused confusion with Defendant Lewis' access to Plaintiff's medical records.  (Id. at 18, 116.)  On February 28, 2023, Plaintiff submitted her licensed counselor's letter to Defendant Lewis, which stated if she returned to the "daily pressures and demands of work at this time, [it] could be seriously detrimental" to her.  (Id. at 19, 129.)

On her "AU Return to Work/Extended Leave Request" form submitted March 26, 2023, Plaintiff's primary care doctor recommended the accommodation Plaintiff "work at a reasonable pace so she is not overwhelmed" from April 11 to July 11, 2023. (Id. at 19-20, 58-59.) The doctor checked the box for "no" when asked if Plaintiff could perform the five essential functions of her job at that time. (Id. at 58-59.) The doctor reported Plaintiff could perform the essential functions only with restrictions between April 11 and July 11, 2023. (Id.) On March 27, 2023, Plaintiff emailed Defendant Lewis to provide her with the return to work forms and other medical documentation. (Id. at 132-33.) Defendant Lewis sent Plaintiff an ADA Accommodation Determination Letter dated April 3, 2023. (Id. at 35.) The letter stated that "lowering or changing the production standards because an employee cannot meet them due to a disability is not considered a reasonable accommodation." (Id.) The letter also noted, "You have been out for four months, and now have restrictions that will prevent you from performing your duties for another four months . . . ." (Id.)

On April 3, 2023, Plaintiff received notification of her employment termination by email from Defendant Green. (Id. at 19, 32-33.) Plaintiff believes she was terminated because she was "out on continuous leave since December 1, 2022, due to serious medical conditions." (Id.) The termination letter stated, "You have been granted several modifications to your estimated date of return and your physician has requested another four months and there is no guarantee that you will be able to return at that time." (Id. at 32.) Plaintiff alleges the termination was discriminatory because Defendants terminated her employment without the "opportunity to fulfill her essential duties with the reasonable accommodation to work at a reasonable pace," as recommended by Plaintiff's doctor. (Id. at 21.) Plaintiff appealed her termination, and the appeal was denied on May 2, 2023. (Id. at 13, 21-22, 39-47.) On May 11, 2023, Plaintiff received a letter notifying her that her healthcare benefits expired April 30,

4

2023. (Id. at 22, 151-52.)  The State of Georgia denied unemployment benefits because Augusta University's termination letter stated she failed to "return to work." (Id. at 13, 21, 22, 50-51)

Plaintiff filed a charge with the EEOC on May 4, 2023, naming Augusta University and claiming she was discharged from work on April 3, 2023, due to "being out of work for serious medical conditions" and believes she was "discriminated against because of [her] disability and subjected to retaliation for engaging in a protected activity, in violation of Title I of the [ADA]." (Id.)  The EEOC did not proceed with investigating her claims and issued a right-to-sue letter on September 27, 2023. (Id. at 7-11.)  On August 14, 2023, Plaintiff retained counsel and issued a demand letter to Augusta University. (Id. at 53-55.)  Defendant Hightower denied the demanded request for relief. (Id. at 22.)

Plaintiff filed suit on December 22, 2023. (Doc. no. 1, p. 6.)  In her amended complaint, Plaintiff alleges claims under Title VII, the ADA, and state statutes for harassment, retaliation, and discrimination based on her termination of employment due to her medical disabilities. (Doc. no. 8, pp. 3, 23-26.)  Plaintiff seeks recovery of lost wages, lost retirement benefits, and medical expenses. (Id. at 26-28.)

**B.     Discussion**

**1.     Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. § 1915(e)(2)(B).  A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."

Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

> 2. **Plaintiff's Title VII Claim Should Be Dismissed for Failure to Exhaust Administrative Remedies**

The procedural requirements to sue for an ADA claim and a Title VII claim are identical.

6

Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999) (noting identical procedural requirements exist under Title VII and ADA).  Although Plaintiff may bring an action under Title VII in federal court, "before filing suit under Title VII . . . a plaintiff must exhaust all available administrative remedies by filing a charge with the EEOC."  Anderson v. Embarq/Sprint, 379 F. App'x 924, 926 (11th Cir. 2010) (*per curiam*) (citing, *inter alia*, 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)).  Plaintiff must pursue all available administrative remedies before filing in federal court.  Id.  For actions under Title VII, a plaintiff is required to have received a right-to-sue letter from the EEOC before filing suit based on the allegations in the corresponding charge.  Forehand v. Florida State Hosp. at Chattahoochee, 89 F.3d 1562, 1567-68 (11th Cir. 1996).

Plaintiff filed a charge with the EEOC and her right-to-sue letter from the EEOC was dated September 27, 2023.  (Doc. no. 8, p. 7.)  However, her EEOC charge makes no mention of discrimination on any basis except disability.  (See id. at 148.)  Plaintiff claims she was subjected to discrimination and retaliation due to her disability "in violation of Title I of the [ADA]."  (Id.)  Plaintiff makes no mention of Title VII anywhere in her EEOC charge and ties any assertion of discrimination or retaliation to her ADA claim.  (See id.)

"A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589, n.8 (11th Cir. 1994).  Moreover, the Eleventh Circuit "has noted that judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate."  Gregory v. Ga. Dep't of Hum. Res., 355 F.3d 1277, 1279-80 (11th Cir. 2004) (*per curiam*) (quoting Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989)).  Because Plaintiff did not raise any Title VII discrimination claim in her EEOC charge,

7

any such claim is not properly before the Court. Accordingly, Plaintiff's Title VII claim should be dismissed for failure to exhaust administrative remedies. See Burnett v. City of Jacksonville, Fla., 376 F. App'x 905, 907-908 (11th Cir. 2010) (*per curiam*) (plaintiff must allege exhaustion of administrative remedies in complaint).

### 3. Plaintiff Fails to State a Claim Against Defendant Augusta University and Defendants Lewis, Green, Hightower, and Mackinnon in Their Individual Capacities

Plaintiff brings suit against her employer, Augusta University, and other supervisory staff. (See generally doc. no. 8.) However, Defendant Augusta University is not a proper party to this suit. Sholes v. Anesthesia Dept., No. CV-119-022-JRH, 2020 WL 1492175, at *4 (S.D. Ga. Mar. 23, 2020) (Hall, C.J.) (dismissing defendant Augusta University as incapable entity of being sued under Title VII and ADA). Augusta University exists and operates solely as a unit of the Board of Regents of the University System of Georgia. See GA. CONST. art. VIII, § 4, ¶ 1(b); O.C.G.A. § 20-3-1; McCafferty v. Med. Coll. of Ga., 287 S.E.2d 171, 174 (Ga. 1982), *overruled on other grounds by* Self v. Cty. of Atlanta, 377 S.E.2d 674 (Ga. 1989). As such, Defendant Augusta University is an entity incapable of being sued and should be dismissed. McCafferty, 287 S.E.2d at 174 (holding Augusta University's Medical College of Georgia, as a unit of the Board of Regents, is not legal entity capable of being sued); see also Bowers v. Bd. of Regents of Univ. Sys. of Ga., No. 1:11-CV-228-ODE, 2012 WL 12893538, at *5 n.12 (N.D. Ga. Mar. 20, 2012).

Plaintiff also names Defendants Lewis, Hightower, Green, and Mackinnon contending these Defendants were in supervisory and administrative positions at Augusta University. (See generally doc. no. 8.) The Eleventh Circuit has unequivocally explained the ADA does not permit defendants to be sued in their individual capacities. See Fodor v. D'Isernia, 506 F. App'x 965, 966 (11th Cir. 2013) (*per curiam*) ("We have held that individual employees are not subject to

8

liability under . . . ADA."); Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007) (concluding district court properly dismissed plaintiff's ADA claim against individuals who were named as defendants in individual capacities because "individual liability is precluded for violations of the ADA's employment discrimination provision"); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996) ("We hold that the Disabilities Act does not provide for individual liability, only for employer liability"). To the extent Plaintiff attempts to bring suit against these Defendants in their individual capacity, such claims are inappropriate under the ADA. Thus, Plaintiff may only assert official capacity claims against Defendants Lewis, Hightower, Green, and Mackinnon as supervisory employees. See Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (*per curiam*).

### 4.     Plaintiff Fails to State a Valid ADA Retaliation Claim

Plaintiff vaguely alleges a retaliation claim under the ADA through her conclusory assertion that she was retaliated against when terminated from her position after requesting an accommodation. (Doc. no. 8, pp. 22-23.) The ADA's anti-retaliation provision states that "[n]o person shall discriminate against any individual . . . because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). ADA retaliation claims are assessed under the same framework employed for retaliation claims under Title VII. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). "To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that: (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the adverse action and her protected expression." Parker v. Economic Opportunity for Savannah-Chatham Cnty. Area, Inc., 587 F. App'x 631, 633 (11th Cir. 2014) (*per curiam*) (citing Stewart, 117 F.3d at 1287).

9

Plaintiff satisfies the first and second elements because she engaged in a statutorily protected activity when requesting a reasonable accommodation and suffered an adverse employment action when she was later terminated. Meyer v. Sec'y, United States Dep't of Health & Human Servs., 592 F. App'x 786, 792 (11th Cir. 2014) (*per curiam*) (Plaintiff's request for reasonable accommodation constitutes protected activity). Plaintiff's claim, however, fails as to the third element as she has not alleged facts "outside of [her] own conclusory say-so, that would support an inference of [retaliation] from the circumstances." Flowers v. Troup Cnty., Ga., Sch. Dist., 803 F.3d 1327, 1337-38 (11th Cir. 2015) (citation and internal marks omitted); see also Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998) ("[A] plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated."). In sum, because Plaintiff fails to satisfy an essential element of a *prima facie* claim for retaliation under the ADA, this claim should also be dismissed.

## II.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's Title VII claim, ADA retaliation claim, Plaintiff's individual capacity claims against Defendants Lewis, Hightower, Green, and Mackinnon, and Defendant Augusta University be **DISMISSED** for failure to state a claim. In a companion Order, the Court allows Plaintiff's ADA discrimination claim to proceed against Defendants Lewis, Hightower, Green, and Mackinnon in their official capacities.

SO REPORTED and RECOMMENDED this 2nd day of April, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA